JOSEPH SALAMA, State Bar No. 212225
LAW OFFICES OF JOSEPH SALAMA
165 N. Redwood Drive, Suite 285
San Rafael, CA 94903
Telephone: (415) 948-9030
Facsimile: (415) 479-1340
joseph@salama.com

Attorneys for Plaintiffs
JOHN DOE, RICK ROE

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT CALIFORNIA

| | |
|---|---|
| JOHN DOE, a minor, by and through his guardians Motion of John Doe and Father of John Doe; RICK ROE, a minor, by and through his guardian Mother of Rick Roe;<br><br>Plaintiffs,<br><br>v.<br><br>ALBANY UNIFIED SCHOOL DISTRICT; ALBANY HIGH SCHOOL; VALERIE WILLIAMS, as an individual, in her personal capacity, and in her official capacity as Superintendent of Albany High School; JEFF ANDERSON, as an individual, in his personal capacity, and in his official capacity as Superintendent of Albany High School; MOES 1-100, inclusive<br><br>Defendants. | Case No. 3:17-CV-02767<br><br>COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND PUNITIVE DAMAGES<br><br>I.  Racially Hostile Environment<br>42 U.S.C. §2000  [Title VI of the 1964 Civil Rights Act]<br><br>II. Violation of The Fourteenth Amendment - Procedural Due Process - Fundamental Right to Education Denied<br><br>III. Violation of The First Amendment - Punishment for Exercising Freedom of Speech<br><br>IV. Violation of The Fourth Amendment - Unreasonable Seizure<br><br>V. Violation of The Fourteenth Amendment - Liberty Right To Be Free From Attack<br><br>VI. Violation of The Fourteenth Amendment - State Created Danger - Failure to Protect from Third Parties<br>42 U.S.C. §1983 [Civil Rights Act of 1871] |

GENERAL ALLEGATIONS

1. This Court has subject matter over this action pursuant to 28 U.S.C. sections 1331, 1343, and 1367 as well as 42 U.S.C. sections 1983, 1988, and 2000.

2. This District is appropriate because the events that took place all took place in the City of Albany, in Alameda County, California. 28 U.S.C. §1391.

3. This action is not barred by the Eleventh Amendment because it does not seek money damages. The relief requested, Injunctive Relief, Punitive Damages, and Attorney Fees, are permissible in federal court against a school district under 42 U.S.C. section 1983.

4. Plaintiff John Doe ["Doe"] is and at all times herein relevant was an individual, a minor, a student at Albany High School, and this action is being brought by and though his parents Mother of John Doe and Father of John Doe. For reasons described below, Doe is presently in fear of retribution by the student body of Albany High School, by the administration of Albany High School, and by the Albany community at large, and is using an anonym out of genuine concern for his safety.

5. Plaintiff Rick Roe ["Roe"] is and at all times herein relevant was an individual, a minor, and a student at Albany High School, and this action is being brought by and though his parent Mother of Rick Roe. For reasons described below, Roe is presently in fear of retribution by the student body of Albany High School, by the administration of Albany High School, and by the Albany community at large, and is using an anonym out of genuine concern for his safety.

6. Doe and Roe, taken together, represent the following nationalities/races: Thai, Irish, Lithuanian, Chinese, Mexican, and Cherokee.

7. Plaintiffs are informed and believe and thereon allege that defendant Albany High School is a public high school located in the City of Albany, County of Alameda in the State of California. Defendant Albany High School is, and at all times herein relevant was, responsible for developing and implementing the policies procedures and practices which led to

the severe contravention of plaintiffs' rights as herein described.

8. Plaintiffs are informed and believe and thereon allege that defendant Albany United School District Board ["Board"] is a governmental entity, and its members are trustees, i.e., delegates of the electorate of Alameda County.

9. Plaintiffs are informed and believe and thereon allege that defendant Valerie Williams is an individual, a citizen of the United States, and a resident of the State of California. Williams is and at all times herein relevant was Superintendent of Albany Unified School District, acting with the course and scope of her employment.

10. Plaintiffs are informed and believe and thereon allege that defendant Jeff Anderson is an individual, a citizen of the United States, and a resident of the State of California. Williams is and at all times herein relevant was Principal of Albany High School, acting with the course and scope of his employment.

11. Defendants Moes 1-100 are sued in both their personal and official capacities as administrators and/or instructors of Albany High School and/or AUSD. Plaintiffs are informed and believe and thereon allege that all defendants and Moes 1-100 are responsible for the acts alleged herein as the agents and employees of Board. All defendants were, when doing the acts herein alleged, purportedly acting within the scope of their office, authority, agency and employment, under color of law, in representative capacity on behalf of Board and are therefore responsible for the acts complained of herein. Board defendants acting separately and in unison, directly and through their agents and subordinates, infringed on the rights of each of Doe and Roe. Moes 1-100 are responsible for drafting, maintaining, and/or administering the policies, procedures and/or practices and/or were responsible for execution, enforcement, application of and discipline pursuant to the aforementioned policies and were each co-participants in the actions and inactions with the other named defendants herein which constitute violations of Constitutional law, federal law, and/or California law.

LEAVE TO AMEND

12. This Action is brought without prejudice to plaintiffs' rights to seek monetary

damages and bring a subsequent action or Amendment to this Complaint once their right to sue has been perfected under the California Government Tort Claims Act. Plaintiffs herein specifically and explicitly reserve that right.

## BACKGROUND ALLEGATIONS

13. Instagram is a bulletin board of sorts on which individuals share photos and videos - all of them are collected in a user's Instagram stream and visible on that user's profile until deleted. There is an option to "like" the photo and an option to comment on it, and you can "tag" people - meaning that you type another user's name or identify a photo as having that user, causing them to get a notification. The tagged individual can respond - by making a comment, tagging back, or both. Any conversation on it is visible to everyone with access to the stream and everyone with access to the stream is able to comment.

14. On or about January 2017, three students of Albany High School ["the Three"] started a private Instagram stream which was not public nor available for anyone to see its contents unless that person requested permission, and it was granted by the account holder, in this case anonymed Chris.

15. This Complaint is being brought on behalf of two of thirteen students who were invited to follow the private Instagram account, an account which started off as a benign and non-offensive stream. After the Thirteen had been added, gradually, Chris, in an effort to gain attention, posted some inappropriate and racially inflammatory photos, targeted at specific African American students. These soon escalated into disgusting and extremely inappropriate photos.

16. None the Thirteen posted any of these photos ["Subject Photos"], nor did they condone them. Many of them never saw the Subject Photos because, like in Doe's case, most Instagram users are simultaneously following over hundreds of accounts. When a user launches the Instagram application or goes to the website, a mix of the user photos that they follow form a feed in chronological order with the most recent on top, inviting a user to scroll through them and like or comment on them. Given number of offensive posts, presently believed to be fewer

than ten, unless a student went to Chris' profile specifically, it is very probable that most of the Subject Photos were not seen at all.  Plaintiffs are informed and believe that at least one of the Thirteen <u>didn't even log into Instagram more than once since he became a follower</u>.

17. Several of the Thirteen "liked" Chris' photos, including the relatively few Subject Photos.  Neither Doe nor Roe posted comments encouraging or supporting the Subject Photos.  In fact, one of the Thirteen posted comments to warn Chris that the posts were not a good idea.  Upon seeing Chris post the word "nigger" one of the Thirteen posted "stupid niBBer" referencing a well-known YouTube streamer Keemstar who got in trouble for calling another streamer named Alex a "stupid nigger", to warn Chris not to get himself in trouble the same way.  That same user took great care to point out to Chris the Golden Rule: that it might not feel so good if the post were about him.  Unfortunately, these messages were completely lost on Chris who continued to maintain the account and host the Subject Photos.  The vast majority of the Thirteen, being minorities themselves, were speechless.

18. Doe and Roe did not "like" or comment on any of the photos while on campus, on the way to or from campus, or while involved in an off campus student activity.  They both only engaged/interacted with Instagram from home in the evenings or on the weekends.  Even, then, between them, they made three or fewer benign comments and were simply not very active on Chris' photo stream because once the Subject Photos went up, there was no longer anything remotely cool about it.  They believed and continue to believe it was maintained exclusively for shock value.

19. On or about March 20, 2017, the private Instagram stream became public when one of the student's friends borrowed his phone and went into the bathroom and, using her phone, took pictures of the account as displayed on his phone's screen.  Plaintiffs are informed that this person sent and/or told the female African American victims and the administration.

20. <u>Failing to follow Family Educational Rights and Privacy Act.</u>  Shortly after March 20, 2017, plaintiffs are informed and believe that the Albany High School administration permitted the identities of the individuals who followed that account to be leaked to the entire

Case 3:17-cv-02767-JD   Document 1   Filed 05/12/17   Page 6 of 18

student body, faculty, and staff of Albany High School.

21. <u>Assuming jurisdiction where there was none</u>.  Without any thought to the fact that one or more of the posts may have occurred off campus, that none of the Three posters of the Subject Photos had intended for the five or six girls therein depicted to ever see them, that it was impossible for the depicted to ever see them and be bullied because it was private stream and they did not have access, or the most important fact of all, that the Thirteen and the Three were not equally culpable, the school quickly labelled all of them as "harmers", interrogated them, and suspended them all equally.  In addition to taking little care to protect the students' identifies, none of the school officials bothered to share the level of participation of any of the students, causing them to all be condemned equally, largely for the acts of the Three.

22. <u>Encouraging persecution of the Thirteen as if they were criminals, conspiring to target and punish all of them equally</u>.  Plaintiffs are informed and believe and thereon allege that Superintendent Valerie Williams, Vice Principal Pfohl, former Principal Anderson, and/or Director of Student Services Marianne Williams actually encouraged each of the teachers of the Thirteen to label them "harmers," treat them with disdain, and purposefully administer exams when they knew the students would be suspended and not present.

23. <u>Continuing to fail to protect the identities of the Thirteen</u>.  During an all school diversity "Rap Rally" on March 29, 2017, respondents permitted an Albany High School junior to get on stage in front of the rest of the high school and identify each of the creators and followers of the Instagram stream by their initials, and they were again labelled "harmers" by respondents' agents, employees, and staff.  In a school of 1,200, using the initials of them in groups easily corresponded to known social groups and was therefore synonymous with using their names.

24. <u>Failing to Enforce SEEDs guidelines and maintain strict control of the parameters of the mediation</u>.  The Thirteen were encouraged to come to the school on March 30, 2017 to make amends by attending a SEEDS restorative justice mediation session which, according to the guidelines, was supposed to only be attended by them and the depicted.  Some

Page 6

of the parents of the Thirteen sent emails to Mr. Jeff Anderson, then principal, informing him that this may not be a great idea and that they were concerned about their children being confused with the Three. In response the parents were told by Vice Principal Pfhol "Well, be prepared for some blowback" and "we will be proactive rather than reactive." Moreover Anderson held out the theoretically "well-trained" volunteers of SEEDS, apparently experts committed to a peaceful reconciliation, as specialists and assured the parents that they will help bring everyone together. In an effort to try to do the right thing, the parents went ahead and sent the Thirteen.

25. <u>Concurrent scheduling of conflicting events</u>. Defendants then allowed a protest to be coordinated (later dubbed a "sit in" for media purposes) at the exact same day and time as the SEEDs mediation, on March 30, 2017, for the purpose of protesting the return to school of the Thirteen. The event was coordinated on social media by students and embraced by the school with administrators, teachers, and staff participating.

26. <u>Losing control of the mediation</u>. The SEEDs mediation took place as scheduled, but not as planned. The depicted attended with several friends - making them total approximately twenty in number - in violation of the SEEDs rules. This stands in contrast with the Doe and Roe and the rest of the Thirteen who were specifically told they couldn't bring anyone else. Doe and Roe and most of the Thirteen showed up for the session. By anyone's definition, the "discussion" which then ensued was not anything close to a mediation. The Thirteen were berated, yelled at, called horrible things, and told how much everyone hated them for what they had done (or, rather, what they believed the Thirteen had done). They each came with the hearts and hats in their hands and were there to apologize to the African American families. Not one of them was afforded any meaningful ability to speak or read their prepared heartfelt statements of apology, responsibility, and sincere desire to move forward together in a unified manner. The "experts" from SEEDs, acting as agents of defendants herein, completely and totally failed to maintain any semblance of control over the session. Plaintiffs are informed and believe that this is because any attempt to create an equal opportunity for all of the

attendees to speak would be interpreted as supporting the racists.

27. <u>The "Noose" Announcement</u>. Plaintiffs are informed and believe that sometime during the SEEDs mediation, defendant Superintendent Valerie Williams became aware of what she apparently believed to be a noose in a tree on or near the campus. With deliberate indifference toward and/or in reckless disregard for the high emotions of the protesters, the delicacy of the SEEDs mediation, the importance of its success for the future harmony and well being of the student body, Williams sent out an email to everyone and their families and/or got on the intercom system announcing that a noose was found in a tree on/or near campus. Upon hearing this news, the African American students in the SEEDs mediation tripled the intensity and volume of their yelling and screaming at the Thirteen, accusing them of making the noose, derailing any hope of reconciliation and healing, and perpetuating the falsehood that they were racist.

28. <u>Losing control of the protest, jeopardizing the safety of every student on campus, particularly the Thirteen; nurturing a racially-charged hostile environment</u>. The mob had started to form while the Thirteen were in the SEEDs mediation, and eventually took over the school. What was packaged and sold to the parents and the media as peaceful sit-in was more akin to a good old fashioned witch hunt. Doe, Roe, and the rest of the Thirteen were ushered out of the room, and formed into a line where they stood while the rest of the approximately three hundred students present surrounded them. The students began to yell, curse, scream, and berate them. They were encouraged to walk through a corridor of students who were yelling various things including "We hate you!", "Look at everyone who hates you!", and "You're a fu*king racist!", essentially a walk of shame more appropriate for a novel by George R. R. Martin or Nathaniel Hawthorne than a United States public high school in the progressive State of California. Ironically, the protesters screaming how much they hate the Thirteen and forcing them to stand together were carrying signs saying "LOVE NOT HATE" and "INCLUSION NOT SEGREGATION."

29. Defendants, acting by and through Williams, Anderson, and their staff, had an

affirmative obligation and mandatory duty to protect the children and yet literally stood there and looked on - even when one of the mothers of the Thirteen was pleading at the top of her lungs for him to do something - anything - to end the shaming ritual. Williams could only pathetically reply with "What if they don't listen to me?" The protest/rally continued for over six hours - with defendants, and each of them, failing to take control of the situation.

30. <u>Allowing the Thirteen to be assaulted (and later two of them to be physically attacked), placed in fear of their lives, and falsely imprisoned.</u> By this time the majority of the Thirteen had fled the scene in fear for their lives. A few remaining students their mothers, and one grandmother ran into one of the rooms on campus, only to have the mob of children trap them in, dare them to come out, make clear a violent reception was waiting and ready to "kick their asses." Among those trapped were Doe and Roe - for over six hours, terrified for their safety and unable to exit. Doe was told by a member of the mob that the noose outside had been made for him. The windows of one room holding the parents of some kids involved were taped by the administration, yet the windows of the room where the students were kept were not, allowing the public outside to jeer at them through the windows like zoo animals.

31. <u>Acting with Reckless Disregard to the Safety of the Students.</u> Anderson, in reckless disregard for the Doe and Roe's health and safety, actually encouraged them to leave the room and step outside as the mob was surround them and getting more angry, after they had blocked all exits, and at a time when they were verbally threatening violence. Anderson urged them to admit that they provoked the entire situation and they were to blame for what was happening. Not long afterward, Williams stopped by to talk to them and tell them they should leave - a conversation which was never finished because the media had arrived and she had to go tell reporters what a success the "peaceful sit in" was. She did not escort them, offer to escort them, call the plainclothes officers on campus to help them, or manifest the slightest appearance that she understood that they were in fear serious bodily harm.

32. <u>Continuing to fail to act to protect the identity of the students; Denying Them a Safe Exit</u>. Defendants, and each of them, allowed students and even teachers to record video

and take photos of the Thirteen and share them freely during the protest.  Upon requesting uniformed police escort, the trapped families were told that the police were not allowed to enter the school.  When the trapped families requested that Williams lock down the building and provide a safe means of exit, she refused.  Two of the depicted's parents, a local pastor, and the basketball coach offered to come and escort them safely out of the school  - and were told by defendants that the trapped families were not interested.  Eventually they fled the room, separate after five hours of this, and hurried into a van.  The van, which had been identified by the mob as their getaway ride, was surrounded, hit, and jerked back and forth.  It was not until a uniformed police unit arrived that they could make their way through the mob and escape.

33. Doe and Roe and their families were afraid to go back to their homes that evening, and spent the night elsewhere.

34. <u>Perpetuating a culture of hatred toward the Thirteen.</u>  On that day, March 30, 2017, and over the next several days, defendants, directly and by and through their agents and subordinates, labeled the Thirteen "Harmers" throughout the school, on whiteboards, encouraging both the teachers and the students to treat them as they felt it was appropriate to treat Chris, and attribute his posts and his remarks to them.  They have missed most if not all of their lessons, homework, and exams.  To this day, having been specifically targeted by hundreds of students, the administration, and teachers, the Doe and Roe cannot set foot on campus without severe anxiety.

35. <u>Again failing to safeguard the identities of the Thirteen.</u>  Their names had been explicitly mentioned in public by the mob on March 30, 2017, with TV crews on hands and everyone allowed to record video and photos of the Thirteen.  They were outed and disparaged on social media from March 29, 2017 to the present.  Their Instagram handles - variations of their names - have been posted all over the internet, in some cases along side their real names.  And their initials were again allowed to be shared publicly, most recently at a board meeting open or about April 25, 2017, attended by over a hundred students and families, broadcast live on the Internet.

36. The Thirteen have received and continue to receive countless threats, in person and online, replete with hateful and abusive speech. When the other lawsuit was filed by Shen and the three other students, this only worsened. Plaintiffs believe that if defendants would have afforded plaintiffs the same concern that they had shown the African American families, perhaps they would not be attacked or threatened with attack every other day. Plaintiffs believe that if their identities were disclosed in this action, the likelihood of them being attacked would increase exponentially. Plaintiffs are informed and believe that several other families would have joined this lawsuit but for the same fear.

37. <u>Denial of their fundamental right to an education.</u>  After six weeks of intense communications between each of the families and Marianne Williams, Valerie Williams, and/or the new principal of the high school in an effort to find an alternative and safe means through which the Thirteen could obtain the rest of their education, the school finally proposed that they attend Bringham Young University's Independent Study program. Plaintiffs are informed and believe that this program, while structured and touted as "online learning," is interacting with a computer; that there is no interaction with an actual teacher during the learning process; that the program does not include any method for fulfillment of classes with labs, like science classes; that the program requires them to repeat the entire semester all over from the start; and that the program takes their summer vacation away from them by requiring summer study. Given that defendants, and each of them, have created an unsafe environment for the Thirteen, and have failed completely to find an alternative method for them to receive a comparable education, they have deprived them of their fundamental right to an education, and have done so summarily, without affording them an iota of due process. To this day, Doe and Roe have no viable method made available to them which can meaningfully substitute for the education they would have received at Albany High School.

38. <u>Reverse Discrimination.</u>  Doe and Roe and the other Thirteen have been judged, labelled, hazed, assaulted, physically attacked, shunned, constructively expelled from the entire community, and have had six of their Constitutionally protected rights stolen from them, all

because they have been associated with private off campus account in which **someone else** had posted offensive photos.  <u>At the same time, they have received threats of violence directly and explicitly targeting them, with photos taken on campus, and nothing has been done by the defendants</u>.  This stands in stark contrast to how quickly and severely the Thirteen were condemned for the horrible photos taken off campus by Chris.

39.   Plaintiffs are informed, believe and herein allege that on or about November 17, 1957, at Dexter Avenue Baptist Church in Montgomery Alabama, a Doctor of Theology, one of the most incredible human beings to ever walk on the planet Earth, delivered a sermon saying, <u>inter alia</u>: "Darkness cannot drive out darkness; only light can do that.  Hate cannot drive out hate; only love can do that."  Based on information and belief, Dr. Martin Luther King, Jr. lived his life by this code and when racists tried to physically attack and kill him, Dr. King responded in a loving manner, hugging them deeply and sincerely, causing his attackers to feel so ashamed they fell to the floor in tears.  Somewhere along the way, this message was lost on the administration, teachers, and students at Albany High School who were not responding to perceive hate with love, but were instead acting as judge, jury, and executioner without taking the time to even stop understand what the underlying facts were or even afford those they punished an opportunity to speak.

## FIRST CAUSE OF ACTION

Violation of Title VI of the 1964 Civil Rights Act - 42 U.S.C. §2000

By All Plaintiffs Against All Defendants

40.   Plaintiffs repeat and reallege each and every statement above and below as if fully stated herein.

41.   Defendants created a racially hostile environment, directly harassing Doe and Roe and the other Thirteen, sufficiently severe that they cannot set foot on campus safely.

42.   Defendants knew about the hostile environment because they themselves created it.  Moreover, they have been told about it repeatedly since March 30, 2017, and have acted with deliberate indifference to the need to stop the harassment, allowing countless threats toward

Doe and Roe to go unchecked, constructively expelling Doe and Roe from school.

43. For these reasons, defendants, and each of them, are in violation of Title VI of the Civil Rights Act.

## SECOND CAUSE OF ACTION

### Violation of Due Process - Fourteenth Amendment

#### By All Plaintiffs Against All Defendants

44. Plaintiffs repeat and reallege each and every statement above and below as if fully stated herein.

45. California has deemed the Right to Education fundamental, and it therefore constitutes an interest which cannot be taken from plaintiffs without a hearing and an opportunity to be heard.

46. Defendants, and each of them, have recklessly created an environment which plaintiffs believe is totally unsafe, namely Albany High School, preventing plaintiffs from safely setting foot on campus, constituting state action pursuant to 42 U.S.C. §1983. Simultaneously with this, they have denied Doe and Roe a comparable opportunity for them to obtain a meaningful and comparable education to the one deprived.

47. Because the fundamental right to an education has been taken from them by state action without any hearing or opportunity to be heard, defendants and each of them have violated plaintiffs' Constitutional Right to Due Process.

## THIRD CAUSE OF ACTION

### Violation of The Right to Free Speech - First Amendment

#### By All Plaintiffs Against All Defendants

48. Plaintiffs repeat and reallege each and every statement above and below as if fully stated herein.

49. The First Amendment of the United States Constitution guarantees the freedom of speech. This is not absolute. Hateful speech is unprotected. Furthermore, speech that puts a person's life in jeopardy, or threatens the safety of those to whom it is spoken, is unprotected.

50. Plaintiffs, and each of them, did not make any hateful speech, and commented both cautiously and appropriately given the outrageousness of the photos. Plaintiffs "liked" random photos in the subject Instagram account, inadvertently including some of the offensive photos. Although they will likely feel horrible about these "likes" for the rest of their lives, their comments and the "likes" were not hateful speech, and did not threaten anyone (unlike the Subject Photos). Nor did they disrupt the learning process or put anyone in fear. It was not until defendants, and each of them, publicized and shared photos of the account, albeit redacted in part, with the entire student body that the learning process was disrupted and the depicted were placed in fear.

51. Defendants acted in excess of their stated jurisdiction under the California Education Code, ultimately punishing Doe and Roe for their protected speech, occurring off campus in a private forum, which independently threatened no one, nor could reasonably have been expected to given that the depicted had no access. Defendant's discipline constitutes state action pursuant to 43 U.S.C. §1983.

52. Defendants ultimately punished Doe and Roe for <u>defendants' own act</u> of causing disruption to the school and putting the victims in fear.

53. By punishing plaintiffs, defendants, and each of them, for comments and protected "likes", they violated Doe and Roe's First Amendment Right to Freedom of Speech.

## FOURTH CAUSE OF ACTION
Violation of The Right to Be Free From Unreasonable Seizure - Fourteenth Amendment
By All Plaintiffs Against All Defendants

54. Plaintiffs repeat and reallege each and every statement above and below as if fully stated herein.

55. The Fourteenth Amendment protects the People of the United States from unreasonable search and seizure.

56. Plaintiffs were detained and accordingly there was state action pursuant to 43 U.S.C. §1983.

57. Although, in the school context, detention for a <u>brief period of time</u> is not a violation of the Fourteenth Amendment, public shaming of students, forcing them to look at their accusers when they try to turn their heads, followed by a five-hour detention for the sole purpose of causing them to feel shame, putting them in fear for their safety and at risk of serious bodily injury, all based on the actions of a third party, is not "reasonable" by any definition.

58. Defendants, and each of them, when they forcibly and unreasonable detained Doe and Roe, violated their Right to be Free from Unreasonable Search and Seizure and therefore violated their Fourteenth Amendment Rights.

## FIFTH CAUSE OF ACTION
### Violation the Liberty Right to be Free From Attack - Fourteenth Amendment
### By All Plaintiffs Against All Defendants

59. Plaintiffs repeat and reallege each and every statement above and below as if fully stated herein.

60. The Fourteenth Amendment guarantees that the government will not deprive anyone of life, liberty or property without due process. Moreover, there is a Fourteenth Amendment liberty right to be free from injury inflicted by a school official.

61. When defendants and each of them caused plaintiffs to be shamed, belittled, and abused, they violated Doe and Roe's right to be free from injury and, accordingly, violated their Fourteenth Amendment Rights.

## SIXTH CAUSE OF ACTION
### State Created Danger - Failure to Protect from Third Parties - Fourteenth Amendment
### BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

62. Plaintiffs repeat and reallege each and every statement above and below as if fully stated herein.

63. The Fourteenth Amendment requires defendants, and each of them, to protect students from third parties when they themselves acted to create the danger.

64. Defendants and each of them created the danger to the Thirteen when they:

- Failed to follow the Family Educational Rights and Privacy Act of 1984 by leaking their identities to the student body and administration when the incident first became known
- Assumed jurisdiction where there was none under the California Education Code
- Encouraged persecution of the Thirteen as if they were criminals, conspired to target individual students despite their actual culpability
- Continued to fail to protect the identities of the Thirteen during an all school diversity "Rap Rally" on March 29, 2017
- Failed to Enforce SEEDs guidelines and enforce the advised of the parameters of the mediation
- Concurrently scheduled conflicting events
- Lost control of the mediation
- Inflamed everyone when they announced the "noose"
- Lost control of the protest and jeopardized the safety of every student on campus, particularly the Thirteen
- Created a racially-charged hostile environment
- Allowed Doe and Roe to be abused, assaulted, placed in fear of their lives, and falsely imprisoned
- Acted with reckless disregard to the safety of the students by standing idly by and watching while Doe and Roe were abused, assaulted, placed in fear of their lives, and falsely imprisoned
- Continued to fail to act to protect the identity of the students by permitting students and teachers to record video and take photos of the Thirteen and share them freely during the protest
- Perpetuated a culture of hatred toward the Doe, Roe and the other Thirteen
- Failed to safeguard their identities when their initials were again allowed to be shared publicly at a board meeting open or about April 25, 2017, attended by over a hundred

1 students and families, broadcast live on the Internet

2     -      Denied them their Fundamental Right to Education

3     -      Discriminated against them by disparate treatment of their complaints of threats

4     65.    These actions and inactions by defendants, and each of them, go far beyond a mere lapse in judgment. These actions and inaction amount to <u>deliberate indifference</u> toward Doe and Roe's safety.

7     66.    When defendants failed to protect plaintiffs Doe and Roe, and each of them, from the rest of the students and the community, and continue to do so, they acted and continue to act in violation of Doe and Roe's Fourteenth Amendment Rights because they themselves orchestrated the danger with deliberate indifference to Doe and Roe's safety.

## IRREPARABLE HARM

12     67.    Plaintiffs Doe and Roe hereby incorporate by reference their Application for a Preliminary Injunction filed herewith in which they detail a strong likelihood of success on the merits and irreparable harm if the requested relief is denied.

## PRAYER

WHEREFORE, plaintiffs Doe and Roe request judgment be entered in their favor as follows:

(i) Defendants and each of them be enjoined from taking any further punitive action against Doe and Roe, individually or collectively;

(ii) Defendants and each of them be ordered to expunge any and all comments on Doe and Roe's academic records and their classroom grading from March 23, 2017 to the present, including but not limited to suspensions, marks by individual teachers for missed exams, marks resulting from failure to turn in homework;

(iii) Defendants be ordered to restore Doe and Roe's right to education with an education at defendants' cost comparable to Albany High School, including interaction with human instructors during class, the ability to perform laboratory work, and the ability to pick up where they were left as of March 23, 2017 to continue their semesters, or as close to that as possible,

so that they can continue their path toward college seamlessly;

(iv) Defendants be ordered to permit Doe and Roe to read their letters of apology to the depicted, at their election, and to the entirety of the student body, uninterrupted, on the school intercom;

(v) Defendants be ordered to pursue any and all threats against Doe and Roe shown to be within their jurisdiction without regard to the color, national origin, or race of any of the students involved;

(vi) An order declaring the actions taken against Doe and Roe specifically, including their suspensions, to be unconstitutional in violation of their Right to Due Process, Freedom of Speech, Freedom from Unreasonable Seizure and Attack, and other rights secured by the First, Fourth and Fourteenth Amendments of the United States Constitution;

(vii) Attorney fees and costs pursuant to 42 U.S.C. §1988;

(viii) Damages according to proof;

(ix) Punitive damages against the individual defendants;

(x) Other further relief to effectuate the foregoing or otherwise as this Honorable Court may deem just and appropriate.

Respectfully Submitted,
LAW OFFICES OF JOSEPH SALAMA

May 11, 2017           __/s/_____
                       JOSEPH SALAMA
                       Attorneys for Plaintiffs
                       JOHN DOE, RICK ROE